**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Ross ALLEY, Defendant–Appellant.**

No. 07CA2325.

Colorado Court of Appeals,
Div. IV.

March 4, 2010.

John W. Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

The Noble Law Firm, LLC, Antony M. Noble, Lakewood, Colorado, for Defendant–Appellant.

Opinion by Judge TERRY.

Defendant, Ross Alley, appeals the judgment of conviction entered on jury verdicts against him for first degree assault and second degree assault. He also appeals the sentence imposed. We first disagree with his contention that the trial court reversibly erred in denying his motion for a continuance. We next consider and reject his assertion that the trial court was required to hold a hearing to determine the competency of an intoxicated witness to testify, and that the failure to do so was reversible error. Finally, we consider the sentence imposed. We affirm his conviction and sentence.

## I. Background

Viewed in the light most favorable to the prosecution, the evidence at trial showed the following.

V.M. (the female victim) met defendant at a senior support services center and invited him to join her at a motel where her friend N.H. (the male victim) was staying. The three of them, all in their sixties and homeless, spent time in the motel room drinking vodka together. After V.M. rejected defen-

dant's sexual advances, he beat her with a cane until she lost consciousness.

N.H. testified that he had been asleep in the room and was awakened by a cracking sound and yelling. He saw defendant sitting on V.M. and hitting her with the cane. When N.H. yelled at defendant, defendant hit him on the head and hand with the cane. N.H. escaped and went to the motel office, where he called 911.

When police arrived at the scene, defendant answered the door. V.M. was found rolled up in a comforter on the bed, unconscious and covered in blood. She suffered multiple injuries, including contusions and swelling in her brain, a broken nose, and a broken finger. After the attack, she suffered from seizures and memory loss. N.H. suffered a hand fracture and a scalp laceration.

The jury found defendant guilty of first degree assault on V.M. and second degree assault on N.H. The trial court sentenced him for these offenses to consecutive sentences of forty-eight years and sixteen years, respectively.

## II. Denial of Motion to Continue

Defendant argues that he was denied effective assistance of counsel because the trial court denied his motion to continue the trial. We discern no reversible error.

■ Whether to grant a motion to continue a trial "is addressed to the sound discretion of the trial court, and [its] ruling will not be disturbed in the absence of an abuse of discretion." *People v. Hampton,* 758 P.2d 1344, 1353 (Colo.1988). A defendant must "demonstrate actual prejudice arising from denial of the continuance." *People v. Denton,* 757 P.2d 637, 638 (Colo.App.1988).

At trial, defendant was represented by counsel from the State Public Defender's Office. With approximately 120 cases on her docket, she had been focused on preparing for another trial scheduled at the same time as defendant's trial, with the expectation that his trial would be moved to an alternative date. At a hearing five days before trial, the trial court denied defendant's motion to continue because there had been multiple continuances, the case had been pending for two

years, the victims were at-risk adults, and defense counsel's scheduling conflict was resolvable. On the morning of trial, defense counsel stated that she had had only two working days to prepare for trial, and she was ill for one of those days.

■ We have reviewed the record to determine whether defendant suffered actual prejudice from denial of the continuance, and conclude he did not. The record does not bear out defense counsel's expressed concerns about her lack of preparation for trial. She gave an opening statement; examined and cross-examined witnesses—including medical witnesses—extensively; preserved objections to evidence; gave significant input on jury instructions; and presented a lengthy closing argument.

Defense counsel's contentions, that due to the court's refusal of a continuance, she did not have adequate time to investigate V.M.'s competency and criminal history, endorse an expert witness, or subpoena other witnesses, were unfounded. The case had been pending for almost two years by the May 14 trial date. That date had been set nearly four months in advance, and any reliance on the June 11 backup trial date was patently unreasonable. Defendant has failed to demonstrate that the court's decision to deny a continuance was the cause of any supposed inability to accomplish these tasks.

Accordingly, we conclude the trial court did not abuse its discretion in denying defendant's motion to continue the trial.

We decline to review defendant's contention that defense counsel was ineffective. This claim is better suited to a Crim. P. 35(c) motion because the trial court is in a position "to develop facts necessary to determine adequacy of representation during an entire trial." *Ardolino v. People,* 69 P.3d 73, 77 (Colo. 2003). In reaching our conclusion that defendant did not suffer prejudice due to denial of a continuance, we do not prejudge any claim defendant may later raise about effectiveness of counsel in any proceeding under Crim. P. 35(c).

III. Testimony of an Intoxicated Witness

■ Defendant next contends he was denied due process by the trial court's failure to examine N.H. on whether he was competent to testify. We disagree.

On the day N.H. was scheduled to testify, defense counsel noticed that N.H. appeared to be intoxicated. When defense counsel objected that N.H. should not be allowed to testify intoxicated, the trial court stated:

> Well, I think intoxication doesn't necessarily render someone's statements involuntary or makes it unable for him to testify [sic]. I'll make an evaluation to see if he's competent to testify. If he's so drunk he's not competent, I'll agree with you, but I'll have to make that determination.

After a portable Breathalyzer test indicated that N.H.'s blood alcohol content (BAC) was at least 0.233, the trial court ordered that N.H. remain in a waiting room, in anticipation that his BAC would diminish over time.

When N.H. was tested again approximately five hours later, his BAC was 0.084. Over defendant's objection that N.H. was not competent to testify, the trial court permitted him to take the stand. The court informed the jury of N.H.'s BAC level, and permitted defendant to cross-examine him regarding his intoxication. At the end of N.H.'s testimony, he was again tested, and the jury was told that his BAC was then 0.049.

■ A trial court "has wide latitude in determining competency," *People v. Galloway*, 677 P.2d 1380, 1381 (Colo.App.1983), and its determination that "a witness is competent to testify will not be reversed absent an abuse of discretion." *People v. Alexander*, 724 P.2d 1304, 1307 (Colo.1986).

■ "Every person is competent to be a witness except as otherwise provided in [the rules of evidence] or in any statute of the State of Colorado." CRE 601. Under section 13–90–106(1)(a), C.R.S.2009, adults are competent to testify unless they are "of unsound mind at the time of their production for examination." A witness is competent to testify if he or she "has the capacity to observe, recollect, communicate and understand the oath to tell the truth." *Alexander*, 724 P.2d at 1307. "A witness is generally presumed competent to testify, and [the party challenging the witness] carries the burden to prove otherwise." *People v. Gillispie*, 767 P.2d 778, 781 (Colo.App.1988).

The record indicates that N.H. abused alcohol and was customarily intoxicated. The prosecution expressed concern that, if his testimony were unduly delayed, he might begin to exhibit symptoms of alcohol withdrawal, possibly resulting in a mistrial. The trial court stated it would "make an evaluation to see if [N.H. is] competent to testify." After learning that N.H.'s BAC measured over 0.2, the trial court delayed putting him on the stand for nearly five hours. By then, N.H.'s BAC had dropped to a level just above the legal limit for driving, and by the time he finished testifying, it had dropped below the legal limit.

Given the trial court's statement that it would evaluate N.H.'s competency to testify and its careful monitoring of his BAC, we conclude it implicitly found him competent to give testimony. Such a finding is not contradicted by the record. Although N.H. experienced intermittent tremors in his hands and had to be assisted into his wheelchair after his testimony, there is no indication in the record that he lacked capacity to observe, recollect, communicate, and understand the oath to tell the truth. He was also thoroughly cross-examined by defense counsel, and the jury was fully apprised of his intoxication status.

We disagree with defendant's contention that a witness's intoxication necessarily requires the trial court to conduct a competency hearing. In Colorado, trial courts are afforded great latitude in dealing with witness testimony, and witness intoxication falls within their purview. *Cf. People v. Trujillo*, 923 P.2d 277, 281 (Colo.App.1996) (manner and scope of examination of a child witness's competency "should be left to the sound discretion of the trial court").

Courts in other jurisdictions have also concluded that the trial court should be given wide latitude in determining the admissibility of an intoxicated witness's testimony, and that it is the jury's role to determine the witness's credibility. *See United States v.*

*Hyson,* 721 F.2d 856, 863–64 (1st Cir.1983); *State v. Cruz,* 218 Ariz. 149, 181 P.3d 196, 213 (2008); *Spencer v. State,* 164 P.3d 649, 652–53 (Alaska Ct.App.2007); *Myers v. State,* 37 Tex.Crim. 208, 39 S.W. 111, 112 (Tex.Crim. App.1897); *cf. Prudential Insurance Co. v. Hashman,* 7 Ohio App.3d 55, 454 N.E.2d 149, 152–53 (1982) (concluding trial court erred by not conducting competency hearing of intoxicated witness, but the error was not prejudicial because trial court would have sua sponte taken action if witness had been incoherent or unable to appreciate nature of oath); *but see* Wash. Rev.Code § 5.60.050 (2009) ("[t]hose who are of unsound mind, or intoxicated at the time of their production for examination" are not competent to testify).

Defendant relies on *People v. Coca,* 39 Colo.App. 264, 564 P.2d 431 (1977), for his contention that the trial court abused its discretion in not holding a hearing to evaluate whether N.H. understood his obligation to tell the truth. *Coca* is inapposite because it involved a witness who had been adjudicated as insane. *Id.* at 266, 564 P.2d at 433. A division of this court concluded that this adjudication was a prima facie showing of incompetency, and therefore the burden of proof of competency shifted to the proponent of the testimony. *Id.* No challenge was raised here to N.H.'s sanity.

Under the circumstances presented here, and in light of the trial court's wide latitude in determining the competency of witnesses, we conclude it was proper for the trial court to admit N.H.'s testimony and leave the jury to determine its proper weight. *See Johnson v. People,* 171 Colo. 505, 508, 468 P.2d 745, 747 (1970).

## IV. Sentencing

Defendant contends (1) the trial court failed to state its reasons for imposing the maximum sixteen-year sentence for second degree assault, (2) the sixteen-year sentence was not supported by the record because N.H. suffered only a small fracture to his hand, and (3) the trial court failed to consider defendant's rehabilitative potential before giving an excessive sentence totaling sixty-four years. We perceive no error.

"Because sentencing requires familiarity with the circumstances of a case, a trial court's sentencing decision will not be disturbed absent a clear abuse of discretion." *People v. Leske,* 957 P.2d 1030, 1042 (Colo. 1998). We will uphold a sentence if it "is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case." *People v. Fuller,* 791 P.2d 702, 708 (Colo.1990).

A sentencing court must consider the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law, the deterrence of crime, and the protection of the public. *Leske,* 957 P.2d at 1043. It must also "state on the record the basic reasons for the imposition of sentence." *People v. Watkins,* 200 Colo. 163, 168, 613 P.2d 633, 637 (1980). The statement does not have to be lengthy, but "should include the primary factual considerations bearing on the judge's sentencing decision." *Id.*

At sentencing, the trial court reviewed the presentence report, including defendant's significant prior felony convictions, and heard argument from the prosecutor and defense counsel. The trial court stated that "this was an extremely egregious situation" where defendant had "attacked viciously" two people who had attempted to help him. V.M., aged 60, suffered permanent injuries, including brain damage, seizures, and amnesia. N.H., aged 63, suffered a scalp laceration and a broken hand, and, as stated by the prosecutor, "is now living with the fact that he couldn't protect the woman that he cared about." The trial court found:

> [Defendant] is and has been a danger to the community, the public, people he meets on the street, people that befriend him, and this could have wound up in at least one death, and possibly two deaths if [N.H.] hadn't gotten out of that room.... I have not seen a more serious assault on two elderly people, albeit by another elderly person, but violent without any justification I can find.

Thus, the trial court stated its reasons for imposing both sentences, and the record reflects that it considered all the appropriate

sentencing factors. *See People v. Linares–Guzman*, 195 P.3d 1130, 1137 (Colo.App. 2008).

The sentences imposed are within the statutory ranges for crimes of violence; were based on appropriate considerations as reflected in the record; and are factually supported by the circumstances of the case. *See Fuller*, 791 P.2d at 708. Thus, we are bound to uphold them.

The judgment and sentence are affirmed.

Judge WEBB and Judge CONNELLY concur.