No. 15,870.

PERRY *v*. THE PEOPLE
(181 P. [2d] 439)

Decided May 19, 1947.

Mr. MERRITT D. VONDY, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

AN information was filed charging Ralph Perry and two others with the crimes of burglary with, and without, force, grand larceny, and receiving stolen goods. Upon motion of Perry, to whom we hereinafter refer as defendant or by name, a severance was granted, and he and one other were tried jointly on these charges. The jury returned verdicts finding Perry and his codefendant guilty of burglary with force, and grand larceny. Judgments were pronounced upon these verdicts, to review which defendant has sued out a writ of error.

The two counts of the information upon which defendant was found guilty were the burglarizing, on February 21, 1946, of the Rollordrome, a skating rink located in Denver, and the taking of thirty dollars therefrom.

The burglarizing of the Rollordrome Roller Rink and the theft of the thirty dollars therefrom is undisputed. Three officers of the Denver police force positively and unequivocally testified that defendant and two others confessed to the crimes of which defendant was found guilty. The officers further testified that when Perry and others were questioned by them in the office of the captain of detectives, defendant, in answer to a question propounded to him, replied that, "due to his condition he was unable to work steady, and he needed money for his medicine, and had decided on this method [burglary and larceny] of getting the means to support himself." According to the testimony of the officers, defendant's codefendant testified that, "he had decided to make this robbery and burglary his business." After one officer had testified to a complete detailed confession as to the Rollordrome episode by defendant and his codefendant, the owner of another establishment in Denver which had been burglarized March 17, 1946, and larceny committed therefrom, testified to this fact, and still another witness was called who testified that his establishment

had been burglarized March 24, 1946. Theretofore defendant and his codefendant objected to the evidence of these other burglaries, and out of the presence of the jury the following occurred:

"Mr. Lichtenstein [Deputy District Attorney]: If your Honor please, by the witnesses Messrs. John B. Dee and L. L. Irvin, we are going to prove similar offenses to show a plan, scheme, design and motive on the part of two or more conspirators, inasmuch as they broke into the establishments in a similar manner. The booty they took was money, and they split it up in the same manner. The defendant Leman [defendant's codefendant] was a lookout in other burglaries admitted to the police department, and so its purpose is to show a scheme, intent and design and plan of a series of burglaries. I think the law—

"Mr. Spangler [counsel for defendant's codefendant]: That is the very thing we are objecting to. They are charged here with burglarizing this roller-skating rink over here. The fact that some other place was burglarized, or a dozen others,—there are burglaries in this town every night, as Your Honor knows.

"The Court: That might be true, unless there was an understanding and agreement between them that that was their job to do, to burglarize generally. That is the proposition, you know, where two or more agree and confederate together.

"Mr. Spangler: They are not charged with that, they are not charged with conspiracy.

"The Court: I think the objection to that testimony should be overruled."

Parenthetically, we may state that the record discloses that the people did not, in the first instance, introduce evidence of other burglaries. This occurred on cross-examination of the first officer called as a witness for the people. The officers testified that defendant admitted that during the burglarizing of the establishment on March 17, 1946, he suffered a heart attack and was un-

able to remain with his codefendant and another until the burglary was completed. Defendant did confess, according to the testimony of the officers, to his participation in the burglarizing of the other establishment on March 24, 1946.

Defendant did not testify. Leman, the codefendant, when called as a witness for defendants, admitted that he had talked to the officers about the burglary and larceny charged and the other crimes about which the witnesses testified, but denied any admission or confession. A third defendant, originally accused of offenses with which defendant was charged, entered a plea of guilty to the charges, and, when called as a witness, refused to testify on the ground of selfincrimination.

The motion for a new trial and the assignments of error are identical. They are as follows: "1. That the verdict of the jury is contrary to the evidence. 2. That the verdict of the jury is contrary to the law. 3. That the verdict of the jury is not supported by the evidence. 4. That evidence on behalf of the people was improperly admitted over the objection of this plaintiff in error. 5. That the court erred in admitting evidence of other offenses than the one charged in the information. 6. That the court erred in limiting counsel for this plaintiff in error in cross-examining witnesses for the people." The grounds set out in the motion for a new trial, as well as these assignments of error, are insufficient.

The obvious purpose of a motion for a new trial is to accord the trial judge a fair opportunity to consider, and correct if necessary, any erroneous rulings and to acquaint him with the specific objection to those rulings. It is equally obvious that attention should be drawn specifically to the alleged objectionable rulings. General objections, such as those here set out in the motion for new trial and the assignments of error, fall far short of calling to the court's attention any specific error made in connection with its rulings, and, consequently, the questions here argued in support of the assignments of error

are not properly presented. *Howard v. People,* 62 Colo. 131, 160 Pac. 1060; *Dickson v. People,* 82 Colo. 233, 259 Pac. 1058.

■ Defendant stresses, and largely relies for a reversal, upon the admission of evidence as to the burglarizing of the two establishments on March 17, 1946, and March 24, 1946, to which evidence his objection as hereinbefore noted was made. It will be remembered that this evidence related to offenses occurring subsequent to the date of the burglary and larceny with which defendant was charged in the information. It is a general rule recognized in this jurisdiction that evidence is not admissible which establishes or tends to establish that one has committed a crime wholly independent of the one for which he is on trial. *Torbert v. People,* 113 Colo. 294, 302, 156 P. (2d) 128, and cases therein cited. It also is well established that there is an exception to the general rule above stated. *Torbert v. People, supra; Reppin v. People,* 95 Colo. 192, 34 P. (2d) 71; *Bacino v. People,* 104 Colo. 229, 90 P. (2d) 5; *Thorp v. People,* 110 Colo. 7, 129 P. (2d) 296; *Warford v. People,* 43 Colo. 107, 96 Pac. 556.

In the instant case the trial court was careful to instruct the jury as to the purpose for which evidence of the burglaries of the two establishments on March 17 and 24, respectively, was admitted, the cautionary instruction being in the identical language approved by us in *Torbert v. People, supra.* Under the decisions cited there can be no question that the evidence as to the other burglaries than those charged in the information were clearly admissible if they had been committed prior to the one charged in the information, and the only question here is whether evidence of crimes committed subsequent to those charged are admissible under the same circumstances and for the same purpose as those committed before the date specified in the information. No decision of our court upon this specific question has been called to our attention, nor have we found any such decision. It seems to be a general rule, with reference

to the admissibility of evidence of subsequent offenses, that if they tend to shed light on the intent, scheme, design and plan, and are not too remote, evidence thereof is admissible and no prejudice results therefrom. 80 A.L.R., p. 1318.

"Evidence of other crimes may be admitted when it tends to establish a common scheme or plan embracing the commission of a series of crimes so related to each other that proof of one tends to prove the other, and to show the defendant's guilt of the crime charged. *Subsequent as well as prior collateral offenses can be put in evidence, and from such system, identity or intent can often be shown.* The question is one of induction, and the larger the number of consistent facts, the more complete the induction is. The time of the collateral facts is immaterial, provided they are close enough to indicate that they are a part of the system." (Italics ours) 1 Wharton's Criminal Evidence (11th ed.), pp. 527, 528, §352.

"Another exception to the general rule is that evidence of other crimes of the same character is admissible when it tends to prove plan, system, habit or scheme of related offenses, or a design to commit a series of like crimes. * * * Unrelated crimes which were barred by the statute of limitations may be introduced to show general plan, and prior crimes committed three years before are not too remote. *Similar offenses subsequent to the crime charged are admissible to show system, as well as prior crimes.*" (Italics ours) Underhill's Criminal Evidence (4th ed.) pp. 344, 346, §187. See also Am. Jur., p. 298, §317; 2 Jones Commentaries on Evidence (2d ed.), p. 1175, §632.

"The length of time over which an inquiry as to other offenses committed by accused may extend is within the trial court's discretion; it has been said that, as a general rule, it must appear that the evidence of other offenses relates to offenses which occurred shortly before or after

the commission of the offense on trial." 22 C.J.S., p. 1091, §683.

█ If the jury credited the testimony of the officers, as it must have done, its verdict definitely and undeniably established that Perry and others entered into a conspiracy, i. e., a scheme, plan and design to gain their livelihood through burglaries and larcenies. The defendants, when jointly tried, need not be charged with a conspiracy in order to make evidence thereof admissible. *Van Wyk v. People,* 45 Colo. 1, 99 Pac. 1009; *Kolkman v. People,* 89 Colo. 8, 300 Pac. 575; 22 C.J.S., p. 1293, §756 (b).

We, therefore, hold that the admission of evidence as to the commission of subsequent offenses as well as evidence that such subsequent offenses were part of a scheme, plan and design, constituted no prejudicial error.

We have examined the other errors assigned and find them without merit.

The judgment is affirmed.